**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:12CV61-RLV**

| | |
|---|---|
| CRUM & FORSTER SPECIALTY ) <br> INSURANCE COMPANY, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TRIPPLE J FRAMING, INC., ) <br> Defendant. ) <br> _____ ) | **Memorandum and Order** <br> **Staying Case** |

**THIS MATTER** is before the Court upon Defendant's Motion to Dismiss or Stay pursuant to 28 U.S.C. § 2201 as well as all related memoranda submitted by Defendant in support and submitted by Plaintiff in opposition.[1] (Docs. 9-12, 16).

**I.**

Plaintiff Crum & Forster Special Insurance Company ("Crum & Forster") is an Arizona corporation with a place of business in New Jersey. (Doc. 1, NC Compl., ¶ 3).

Defendant Tripple J Framing, Inc. ("Tripple J") is a Texas corporation with its principal place of business in North Carolina (a North Carolina resident). (NC Compl., ¶ 2).

Crum & Forster provided Commercial General Liability ("CGL") insurance coverage to Tripple J from approximately March 2004 through March 2006, during which time Tripple J performed work within the State of South Carolina.[2] It is the performance of Tripple J's services

---

[1] The undersigned does not consider the April 16, 2012 email exchange proffered as "Exhibit A" to Tripple J's Reply Brief. (Doc. 12). *See Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir.2004), cert. denied, 543 U.S. 979 (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir.1999)).

[2] The original Crum & Forster CGL Policy issued to Tripple J, policy number GLO 021038, was effective from March 9, 2004 through March 9, 2005, and had limits of $1 million per occurrence and $2 million in the aggregate. (Def.'s Mem. In Supp., 2). The policy was renewed by policy number GLO

in South Carolina that gives rise to the underlying dispute, namely, claims brought against Tripple J and other contractors related to the construction of a condominium development in Mt. Pleasant, South Carolina.

To date, there are three different lawsuits in two different states.[3]

## II.

**A. Underlying SC Action Brought By Property Owners' Association[4]**

The first or underlying action was brought by the Long Grove Property Owners' Association ("Association") against Tripple J and several others alleging defective design and construction with respect to the Long Grove Condominium Project ("Long Grove"),[5] located within the Seaside Farms subdivision in Mt. Pleasant, South Carolina. *See Long Grove Property Owners' Ass'n, Inc., et al. v. Tripple J Framing, Inc.*, et al., Case No.: 2011-CP-10-7965. (NC Compl., Exh. A / Long Grove Compl., ¶¶ 2, 16). Tripple J installed the framing, siding, trim, doors and windows. (Long Grove Compl., ¶ 7). Since the completion of construction, residents have reported problems with water infiltration and termite damage. (Long Grove Compl., ¶ 7). The Association alleges that the damage sustained by property owners within Long Grove was caused by defective design and / or defective construction and / or defective materials and products used in connection with the Long Grove build. (Long Grove Compl., ¶ 16).

---

080992, which provided coverage from March 9, 2005 through March 9, 2006. (NC Compl., Exh. C). For convenience, the Court will refer to these as the "Crum & Forster Policies."

[3] For clarity's sake, citations to the Complaint in this federal action will be designated as "NC Compl.,___."

[4] For convenience, the undersigned will refer to this matter as the "Association Action."

[5] The Long Grove Condominium Project was formerly known as Long Grove Apartments.

On November 8, 2011, the Association amended its original Complaint to name individual members of the Association as plaintiffs and in order to render the allegations in the Amended Complaint as being brought "individually and on behalf of others similarly situated." (NC Compl., Exh. B)

On April 23, 2012, Tripple J notified Crum & Forster of the Association Action and requested defense and indemnity coverage. In correspondence to Tripple J dated May 22, 2012, Crum & Forster disclaimed any duty to defend or indemnify Tripple J for the underlying action. (NC Compl., ¶¶ 22-23).

Builders Mutual Insurance Company ("Builders"), a subsequent CGL Insurer to Tripple J, is defending Tripple J in the Association Action under a reservation of rights. (Def.'s Mem. In Supp., 2).

### B. WDNC Federal Declaratory Judgment Action

On May 25, 2012, three days after Tripple J notified Crum & Forster of the Association Action, Crum & Forster commenced federal litigation in this Western District of North Carolina. Crum & Forster moves for declaratory judgment that it has no obligation to defend or indemnify Tripple J under the Crum & Forster Policies for the alleged defective work performed in South Carolina. (NC Compl., ¶ 25).

### C. SC Declaratory Judgment Action

On July 27, 2012, approximately two months after this federal declaratory judgment action was initiated by Crum & Forster, a second related action was filed by Tripple J and the Association (along with all individual plaintiffs in the Association Action).[6] Tripple J, the

---

[6] The Association Action asserts its claim in its corporate capacity and on behalf of the individual condominium owners who are the actual Association members.

Association, and individual plaintiffs commenced a declaratory judgment in the Circuit Court of the Ninth Judicial Circuit of the State of South Carolina pursuant to the Uniform Declaratory Judgment Act, S.C. Code § 15-53-10, *et seq*. *See Tripple J Framing, Inc., et al. v. Crum & Forster Specialty Ins. Co., et al.*, Case No.: 2012-CP-10-4895 (the "SC Declaratory Judgment Action"). The SC Declaratory Judgment Action names all of Tripple J's insurance carriers, including Crum & Forster, six other insurance carriers, plus any carriers unknown to the parties. (SC Compl., ¶ 54). The SC Declaratory Judgment Action advances a single claim alleging breach of contract against all of the potential Insurers. In other words, the SC Declaratory Judgment Action seeks solely to determine the parties' respective rights under the multiple insurance policies, including the Crum & Forster policies.

Tripple J now moves for dismissal, or alternatively, a stay, in light of the parallel SC Declaratory Judgment Action. Crum & Forster opposes the motion.[7]

### III.

In *Centennial Life Ins. Co. v. Poston*, the Fourth Circuit explained the nature of the Federal Declaratory Judgment Act, and the relevant considerations when determining whether to entertain or decline jurisdiction in the face of related state proceedings:

> The Federal Declaratory Judgment Act provides that district courts "may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). This power has consistently been considered discretionary. *See, e.g., Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942); *Wilton v. Seven Falls Co.*, 115 S.Ct. 2137, 2144 (1995); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.1937).
> [A] declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and

---

[7] Tripple J's Motion to Dismiss or Stay effectively stayed this federal declaratory judgment action pending disposition of the motion. *See* WDNC L.Cv.R. 16.1(A) and (D).

controversy giving rise to the proceeding." *Quarles*, 92 F.2d at 325 (quoting Edwin M. Borchard, *Declaratory Judgments* 107–09 (1934)). It should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Quarles*, 92 F.2d at 325. The Supreme Court explained that, when a related state proceeding is underway, a court considering a declaratory judgment action should specifically consider whether the controversy "can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176. This consideration should be guided by a number of factors, including the nature and scope of the state proceeding and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding...." *Id.*; *see also Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992).

Guided by these general principles—as well as "the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts"—the Fourth Circuit has set forth a number of specific factors for district courts to consider. *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir.1994). These include:

(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
(ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;
(iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and]
(iv) whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

*Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir.1996) (listing "*Nautilus* factors").[8]

Of these factors, "whether the claims of all parties in interest can be satisfactorily be adjudicated in [the state court] proceeding . . ." is significant. *Poston*, 88 F.3d at 257.

---

[8] Crum & Forster contends that *Centennial Life Ins. Co. v. Poston* is not controlling because the parallel state action had an additional defendant, had already undertaken discovery, and the case was not limited to issues concerning interpretation of insurance policies and coverage disputes. (Pl.'s Mem. In Opp'n, 19).

5

**D. Analysis**

Having considered the "*Nautilus* factors" in determining whether either a dismissal or stay is in order, the Court concludes that a stay is appropriate. The *Nautilus* factors weigh heavily in favor of a stay for the same reasons set forth in the *BB & T* decision relied upon by the movant. *See e.g., Hartford Cas. Ins. Co. v. BB & T Fin. Corp.*, 131 F.Supp.2d 752 (W.D.N.C. 2001); (Def.'s Mem. In Supp., at 5-8); *see also Crum & Forster Specialty Ins. Co., v. Tripple J. Framing, Inc., and Westfield Ins. Co.*, Civil No.: 5:06CV160-DH (Doc. 63) (or "*Crum & Forster I*"). Crum & Forster proffers no meaningful response to the stay issued in prior litigation between these same parties in the Western District of North Carolina.[9]

In short, the State of South Carolina's interest in this dispute is more compelling than any interest this federal forum may have, *including an interest in enforcing a contract entered into within North Carolina*. According to Crum & Forster, the insurance policies that inform this dispute were delivered to Tripple J in North Carolina. (Doc. 10-1, ¶ 2; Doc. 1-3 at 2; Doc. 1-4 at 2). Crum & Forster contends that North Carolina, the "natural forum" for adjudicating this dispute, should govern the interpretation and enforcement of the relevant insurance policies. (Opp'n Brf., 5). Crum & Forster relies on a familiar North Carolina rule holding that "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*,

---

[9] This is not the parties' first experience debating which is the better forum. In prior litigation between these two entities where similar water infiltration problems occurred in connection with a different residential property development, U.S. Magistrate Judge Dennis L. Howell weighed the advantages and disadvantages of imposing a stay of federal litigation in this Western District of North Carolina in favor of parallel litigation in South Carolina. *See e.g., Crum & Forster Specialty Ins. Co., v. Tripple J. Framing, Inc., and Westfield Ins. Co.*, Civil No.: 5:06CV160-DH (Doc. 63) ("Crum & Forster I"). Magistrate Judge Howell, like the undersigned, relied heavily on the *BB & T* decision and rationale in electing to stay the federal matter pending in this Court. (*Id.*)

351 N.C. 424, 428 (2000). Evaluating a CGL policy issued to a developer, and deciding the precise issue presented here, the *Crum & Forster I* Court described the State of South Carolina's interest as follows: 1) South Carolina is where all the work was performed; 2) South Carolina is where the liability (if any) arose; 3) South Carolina is where homeowners have apparently incurred damages to their respective homes; and 4) South Carolina, with its own system of building codes and inspections, has a strong interest in the integrity of the homes built in that state; and 5) South Carolina is where any repairs will be made. *See Crum & Forster I*, at 8. Indeed, the Court found that South Carolina's interest was "undiminished" by the fact that another entity might have corporate offices in another state. *Crum & Forster I*, at 8. In *BB & T*, the specific interest found to be both "substantial" and "superior" was South Carolina's "interest in ensuring that insurance contracts written to protect an interest in property located within the State are honored." *BB & T*, at 755. Likewise, the protection of real property interests within South Carolina is "substantial" here.[10]

Notwithstanding filing dates, it is more efficient to defer to the existing SC Declaratory Judgment Action. Although the federal lawsuit was the first declaratory judgment action filed, the parallel SC Declaratory Judgment Action presently names all of the insurance company entities that have an interest in deciding the factual and legal issues regarding coverage under the respective policies. This circumstance is entitled to more weight than the date of filing. *See e.g., Poston*, 88 F.3d at 258. Rather, "[t]he primary concern expressed in *Nautilus* is not the timing

---

[10] Crum & Forster seeks to distinguish *BB & T* from the instant case because the nature of the insurance policies differ. According to Crum & Forster, in *BB & T*, the insurance policy was not a CGL policy but instead insured the individual property owners and their respective properties located within South Carolina. For this reason, Crum & Forster contends that South Carolina's interest here in terms of enforcing the CGL policy is weaker than in *BB & T*. This Court is not persuaded. Notwithstanding the CGL-type policy, as implied in *Crum & Forster I*, the Association and the individual property owners are third-party beneficiaries to the commercial insurance contracts between Crum & Forster and Tripple J. (*Crum & Forster I*, at 5).

of actions, but with whether courts are being asked to decide issues *ad hoc*." *Crum & Forster I*, at 10. Here, both parties contend they will take a given action in the preferred forum to neutralize certain of the *Nautilius* factors. Crum & Forster represents that *if the instant case is permitted to proceed*, Crum & Forster intends to join Tripple J's other insurers as indispensable parties.[11] Crum & Forster also states that it intends to move for dismissal of the South Carolina Action and will rely on the "first to file" rule.[12] *See e.g., Americal Corp. v. Int'l Legwear Group, Inc.*, 2011 WL 841364, *7 (W.D.N.C. March 4, 2011) (internal citations omitted). In the event liability is found in the Association Action, the SC Declaratory Judgment Action is in a posture *now* to address all of the remaining legal issues including the question presented here.[13]

Moreover, the federal court's mandate to avoid unnecessary entanglement favors deferring to the SC Declaratory Judgment Action. Discussing similar facts, the *Wilton* Court explained: "An insurer, anticipating a coercive suit, sought a declaration in federal court of nonliability on an insurance policy." *Wilton v. Seven Falls Co.*, 115 S.Ct. 2137, 2141 (1995) (*citing Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)). Reaffirming the rule of law

---

[11] According to Crum & Forster, the Association and individual property owners are dispensable to the coverage questions presented in this case and, therefore, Crum & Forster does not intend to join them here. In fact, Crum & Forster argues that the Association and property owners are not properly named as plaintiffs in the South Carolina Action in that they have no standing as to the existence or scope of insurance coverage Crum & Forster might owe Tripple J. Crum & Forster do not address directly the concept of third-party-beneficiary status but do suggest that the Association "can easily monitor the progress and ultimate outcome of the pending NC Action." (Pl.'s Mem. In Opp'n, at 12 n. 3).

[12] Crum & Forster cites *Americal* for the proposition that the federal case should proceed because it was the first lawsuit filed. *See Americal Corp.*, 2011 WL 841364, *7 (W.D.N.C. March 4, 2011) (citing *Eways v. Governor's Island*, 391 S.E.2d 182 (N.C. 1990) (exercising federal subject matter jurisdiction despite state case law suggesting that subsequent parallel state lawsuit may be subject to plea in abatement). Indeed, as a general rule, "the first suit should have priority, absent the showing of a balance of convenience in favor of the second action." *Id.* However, the *Americal* case sought to resolve competing intellectual property rights and did not involve complaints of ongoing damage to real property.

[13] The Court evaluates the relevant factors on the record as it currently exists as opposed to what the parties speculate about.

pronounced in *Brillhart*, the Supreme Court stated, "at least where another suit involving the same parties and presenting opportunities for ventilation of ***the same state law issues*** is pending in state court, a district court might be indulging in 'gratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* A stay of this matter is warranted so as to avoid inconsistent rulings in the different forums.

Finally, whether Tripple J, or Crum & Forster, *or both*, are engaged in procedural fencing is not determinative of the Court's decision. Although there has not been any choice of law decision in either forum, Crum & Forster represents that South Carolina law *will* be applied by the South Carolina court if this matter is stayed or dismissed.[14] Tripple J asserts it will advocate for application of South Carolina law regardless of the forum.[15] (Reply, 2). Admittedly, South Carolina's "time on risk" rule of law is advantageous to Tripple J because it allows Tripple J to allocate liability amongst more insurers. (Reply, 4) *See Crossman Cmty. of North Carolina, Inc. v. Harleysville Mut. Ins. Co.*, 717 S.E.2d 589 (S.C. 2011). As Tripple J explains, in the event of continuous damage, like the water infiltration damage the Association Action alleges occurred at Long Grove from 1999 forward, the losses can be divided between insurers providing coverage at any "time on risk." (Reply, 4). Reportedly, there are as many as

---

[14] South Carolina Code, Section 38-61-10, entitled, "Contracts which are considered made in State," reads:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

[15] Tripple J relies on *BB & T*, and *Crum & Forster I*, which both acknowledge that even if North Carolina law applied to questions of contract interpretation, South Carolina courts are capable of applying North Carolina law. In *Crum & Forster I,* the Court stated, "there is no reason to believe that a South Carolina court would be any less adept in applying the correct law to issues of contract interpretation." *Id*.

ten different Tripple J policy periods implicated. (Reply, 3-4). Under North Carolina law, an "injury-in-fact" rule triggers coverage only for the policy in effect on the date the damage is determined to have first occurred. (Reply, 4). *See Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 524 S.E. 2d 558 (2000).

## IV.

The Court, in its discretion, elects to **STAY** this matter during the pendency of the proceedings in state court.[16] The parties will be required to submit a quarterly Status Report until such time as the related South Carolina cases are disposed of and / or until further decision by this Court.

**IT IS THEREFORE ORDERED** that Defendant Tripple J's Motion to Dismiss or Stay is **GRANTED in part** and **DENIED in part**. Accordingly, this matter is temporarily **STAYED** until further notice.

**IT IS FURTHER ORDERED** that the first Status Report will be due **on or before Wednesday, August 21, 2013**.

Signed: May 22, 2013

Richard L. Voorhees
United States District Judge

---

[16] "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, insofar as it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Wilton*, 115 S.Ct. at 2143 n. 2.